Raymond S. Whitfield v. Commissioner.
Raymond S. Whitfield v. Commissioner
Docket No. 19068.
United States Tax Court
1953 Tax Ct. Memo LEXIS 50; 12 T.C.M. (CCH) 1329; T.C.M. (RIA) 53372; November 27, 1953
Moise S. Steeg, Jr., Esq., for the petitioner. M. Clifton Maxwell, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent has determined deficiencies and penalties against petitioner, Raymond S. Whitfield, as follows: Fraud
Negligence
Sec. 294(d)(2)
Year
Tax
Deficiency
Penalty
Penalty
Penalty
1944
Income
$4,694.78
$2,347.39
$234.74
$278.63
1945
Income
1,807.25
903.63
90.63
108.26
The deficiencies arise and the penalties attach, according to respondent, because petitioner fraudulently, or at least negligently, failed to report taxable income from the operation of a used car business, Louisiana Auto Sales, located in New Orleans, Louisiana, during the years *51 in controversy. Findings of Fact The petitioner was a used car dealer in New Orleans, Louisiana, during 1944 and 1945, which are the years in controversy. His individual income tax return for each of these calendar years was filed with the collector of internal revenue for the district of Louisiana on March 15, 1945 and 1946, respectively. In April, 1944, petitioner entered into a partnership with John Truett, Thomas Scandoliato and Therman Simmons to conduct a used car business under the name of Louisiana Auto Sales. Each partner contributed $1,000 as original capital. Scandoliato and Truett withdrew from the partnership around August 1, 1944. Petitioner and Simmons continued the business until the death of Simmons caused dissolution of the partnership on September 4, 1945. During September, 1945, petitioner conducted the business alone and, on October 1, 1945, he formed a new partnership with Truett under the same name as the former partnership. Partnership returns for the years 1944 and 1945 were filed with the collector of internal revenue for the district of Louisiana. In his individual return for the year 1944, petitioner reported gross income of $4,978.87. Of this, $4,546.58 *52 was reported as his distributive share in the income of the partnership, Louisiana Auto Sales, and $423.29 from employment prior to the formation of the partnership. The return indicated withholdings of $50.88 and an estimated tax of $844 which had been paid. The respondent has determined that petitioner's distributive share in the partnership income was $16,755.26 and that a deficiency in the amount of $4,694.78 existed in petitioner's tax for 1944. The petitioner has conceded that respondent's determination of his income and the deficiency for 1944 are correct. In his individual return for the year 1945, petitioner reported gross income of $5,351.31. Of this, $3,470.31 was reported as his distributive share of the income of the partnership, Louisiana Auto Sales, and $1,881 from other sources. The return indicated an estimated tax of $350.88 which had been paid. The respondent has determined that petitioner's distributive share in the partnership income was $8,995.26 and income from other sources was $3,592.62 in 1945. Accordingly, the respondent determined that a deficiency in the amount of $1,807.25 existed in petitioner's tax for this year. Petitioner has conceded that respondent's *53 determination of his income and the deficiency for 1945 are correct. The partnership maintained its bank account with the Whitney National Bank of New Orleans in the partnership name, Louisiana Auto Sales. The account was opened on April 13, 1944, with t8e deposit of $2,000 and a similar deposit was made the next day, April 14, 1944. These deposits represented the initial capital contribution of the original partners. The account was active during April and each month thereafter until it was closed on September 5, 1945. It was necessary for both Simmons and Whitfield, the petitioner, to sign all withdrawals from the account. The account was reopened on September 28, 1945, for the partnership of Whitfield and Truett. Only petitioner's signature was necessary to make withdrawals from the reopened account. Petitioner and Simmons maintained another account with the Whitney National Bank of New Orleans under the name "R. S. Whitfield, Jr., and T. Simmons" (referred to hereafter sometimes as the "special account"). This account was opened on May 10, 1944. Deposits were made regularly throughout 1944. The last deposit was made on December 28, 1944. The respondent has determined that *54 income taxable to the members of the partnership, Louisiana Auto Sales, in the amount of $10,268.95 was deposited in the special account in 1944. Both petitioner and Simmons had to sign for all withdrawals. The account was closed March 2, 1945. From the inception of the partnership until Simmons became ill in the summer of 1945, petitioner acted as the "outside man" for Louisiana Auto Sales. In this capacity, he purchased used cars for the partnership and acted as salesman. Simmons attended to the details of the office and records. A bookkeeper, Emily Ryan, was retained by Simmons and Whitfield, and later by Whitfield during the second partnership, to prepare workpapers for use in preparing the partnership returns and the individual returns of the partners. At the end of each year, she was given the check stubs, cancelled checks and bank statements for the partnership account in the Whitney National Bank in the name of Louisiana Auto Sales. She prepared workpapers by making month-by-month balances of deposits against withdrawals from these records. She knew of no other bank account through which receipts or expenses of the partnership moved. The workpapers for the year 1944 were *55 prepared with May 1 as the starting date of the partnership on instructions from Simmons and Whitfield. For the year 1945, she prepared workpapers for the Simmons and Whitfield partnership from January 1 through September 4 and for the Truett and Whitfield partnership from October 1 through December 31. Significant mathematical errors were made by the bookkeeper in compiling her workpapers. The effect of the errors was to understate substantially both the income of the partnership and its allowable deductible expenses. In 1944, the bookkeeper's calculations based on the partnership bank account erroneously understated receipts reflected in that account by $9,872.16. Her calculations understated allowable expenses by $5,032.26. In 1945 the bookeeper erroneously understated partnership receipts by $7,719.50 and its allowable expenses by $6,360.03. The partnership reported ordinary net income of $15,893 in 1944. The bookeeper's errors resulted in understating the partnership net income by $1,589. The records given to the bookkeeper did not account for $12,005 in partnership income deposited in the special account or received from checks payable to the partnership which were cashed *56 but not deposited either in the partnership or the special account. The respondent determined that the partnership ordinary net income was $40,310 in 1944. For the period January 1 through September 4, 1945, the partnership reported ordinary net income of $6,940. The bookkeeper's errors resulted in understating partnership net income during this period by $2,185. The records given to the bookkeeper did not account for $4,289 in partnership income received in checks payable to the partnership which were cashed but not deposited in the partnership account. The respondent determined that the ordinary net income of the partnership in this period was $10,165. For the period from October 1 through December 31, 1945, the partnership reported ordinary net income of $3,730. The errors of the bookkeeper resulted in overstating the partnership income by $1,330 in this period, but $1,670 in income to the partnership during this period, represented by checks payable to the partnership which were cashed but not deposited in the partnership account, was not evident in the records given to the bookkeeper. The respondent determined the partnership ordinary net income during this period was $7,825. *57 A tax accountant of twenty years' experience prepared the partnership returns and the individual returns of the petitioner Whitfield from the information on the bookkeeper's worksheets. He discussed Whitfield's return with the latter each year. He asked Whitfield particularly for sources of income other than those reflected in the account in the Whitney National Bank in the name of Louisiana Auto Sales on which the workpapers had been prepared. Except for an item of $15.51 in the year 1945, no income other than the distributive share in the partnership account as shown on the workpapers was disclosed by petitioner to the accountant who prepared his returns. Analyses of the partnership account and the special account by investigators of the Internal Revenue Bureau show that the proceeds of at least ten checks payable to the partnership, aggregating $3,944 and ranging between $15 and $883, were endorsed by petitioner and deposited in the special account in 1944. These checks represented receipts to the partnership in 1944 for (1) bonuses earned by referring used car purchasers to the Harris Finance Company for financing and (2) proceeds from the sales of used cars. As we found above, *58 a total of $10,268.95 in taxable income of the members of the partnership was deposited in the special account in 1944. Also discovered were six checks of the Harris Finance Company payable to the partnership aggregating $1,736.20, and ranging between $141 and $500, which were endorsed and cashed by petitioner and Simmons which were not deposited in the partnership account or in the special account. These checks also represented receipts to the partnership in 1944 from bonuses or from the proceeds of the sales of used cars. Petitioner did not report as income his distributive share in the profits from the proceeds of the checks deposited in the special account or from the proceeds of those which were cashed and not deposited in either account. For the period January 1 through September 4, 1945, investigators found fifteen checks issued by the Harris Finance Company payable to the partnership which aggregated $4,289.45 and ranged in value from $50 to $627, which were endorsed and cashed by petitioner and Simmons but were not deposited in the partnership account or in the special account. These checks represented receipts to the partnership from bonuses and the proceeds of the sales *59 of used cars. Petitioner's distributive share in the portion of these checks which represented income was not reported by him in 1945. During the month of September, 1945, petitioner conducted the operations of Louisiana Auto Sales by himself. Investigators discovered nine checks issued to him by the Public Finance Company with an aggregate value of $493 in payment for rent and services rendered during that month which were endorsed and cashed by petitioner but not deposited in any bank account. These checks ranged in value from $3 to $175. Also, one bonus check from Harris Finance Company for $105 was endorsed and cashed by petitioner but not deposited in any bank account. These checks represented income to the petitioner but were not reported in his 1945 return. During the month of September, 1945, petitioner sold five used cars. The cost of these cars was $3,088. Petitioner received a total of $4,002 from these sales. Petitioner reported none of the profit from these sales as income in his return for 1945. For the period of his partnership with Truett from October 1 through the end of 1945, there were five checks issued by Harris Finance Company payable to the partnership, *60 aggregating $1,670, which were endorsed and cashed by petitioner but not deposited in any bank account. Petitioner did not include in his 1945 return his distributive share in the portion of the proceeds of these checks which represented income. Petitioner did not challenge the redetermination of his income for 1945 which included his distributive share of checks payable to Louisiana Auto Sales in the period prior to September 4 which were cashed and not deposited in the partnership bank account, nor did he challenge the inclusion of income from his sales in the month of September while he operated the business himself, nor did he challenge the inclusion of his distributive share in the checks payable to the successor partnership following October 1 which were cashed with his endorsement but not deposited in the partnership account. Respondent's notice of deficiency concerning petitioner's 1944 and 1945 returns was mailed on March 15, 1948, via registered mail to the address stated on petitioner's returns for those years. The notice was returned undelivered by the Post Office and respondent effected personal delivery of the notice on April 28, 1948, through the office of the collector *61 of internal revenue for the district of Louisiana. The petitioner substantially understated his estimated income and actual income in his returns for the calendar years 1944 and 1945. Petitioner fraudulently intended to evade the lawful taxes on his actual income in these years. Opinion ARUNDELL, Judge: Petitioner has conceded that the income and resulting deficiencies determined by respondent are correct. We are concerned only with the penalties determined by respondent. Thus, this case now presents questions of whether any part of the deficiencies was attributable to fraud, [1] or to negligence, [2] and whether petitioner failed to comply with the requirements of section 294 (d) (2) for estimating his income tax in these years. *62 It hardly needs reiteration of authority at this late date to state that fraud is never presumed or that the respondent has the burden of proving fraud. Moreover, fraud must be established by more than a mere preponderance of evidence; it must be shown by clear and convincing evidence. . After consideration of the entire record in this case, we think that the respondent has established that Whitfield fraudulently intended to evade a part of his income taxes in 1944 and 1945 by reporting incorrectly his income in these years. In determining whether a taxpayer fraudulently failed to report income, we are dealing with a question of intent. Seldom is direct proof of intent available or even possible. It is usually determined by the whole pattern of the transactions under scrutiny and by the taxpayer's conduct with respect to those transactions. Also, we usually have the benefit of observing the taxpayer on the witness stand and are aided in testing the credibility of his explanations for failing to report properly his income for tax purposes. Isolated errors or discrepancies in records are not enough to establish a fraudulent intent *63 to conceal income. However, where the taxpayer's bookkeeping is grossly inadequate and permeated with error, where elaborate artifice is used to hide income, where large amounts of income unquestionably received do not appear on his records, and where the explanations for these errors and lapses are patently weak or incredible, then the conclusion is almost inevitable that the taxpayer intended to conceal his true income. ; , affirmed in part, , affirmed in entirety, ; . We think that the facts surrounding the special account used by petitioner and his associate demonstrate clearly a fraudulent intent to evade taxes. Also, the practice of cashing and pocketing the proceeds of a large number of checks throughout the two years in issue is significant in demonstrating an intent to hide the actual income of the partnership and its members. The special account was used only in 1944. In that year over $10,000 of partnership income was deposited in the account. None of it was reported and none of it was *64 evident in the records given to the bookkeeper and the accountant who prepared the partnership and the individual returns. No doubt exists that the money in the account constituted income of the partnership and that the petitioner should have reported his share thereof in his individual return. This has been conceded. We have been given no reasonably credible explanation for the failure to report the income in the special account. We are told that since it was maintained in the same bank as the partnership account, it was not hidden with the premeditation or craftiness that would indicate fraudulent intent to conceal it. But we do not regard this as an explanation for the failure to report the contents of the special account. We are also told that the special account was a peculiar device in the used car business and had the bookkeeper not been negligent she would have discovered the account when she was preparing the workpapers for the partnership returns. Again, however, this falls short of a reasonable explanation for petitioner's failure to report his share of the income in the account. Finally, petitioner urges that he relied in Simmons to reveal the existence of the account *65 when the business records were turned over to the bookkeeper. This he claims was Simmons' duty as the managing partner. However, even assuming that Simmons had the initial responsibility for the business records, petitioner must have known that the special account was not included in the workpapers prepared by the bookkeeper or in the income shown on the returns prepared by the accountant. Petitioner was an equal partner with Simmons and engaged in the most important phase of the business - buying, selling and trading used cars. It was a successful operation but not so large that petitioner could not have been aware of how profitable it was, particularly when he made the deals on which its success largely depended. His returns for 1944 reported only one-fourth of the total income which he now admits was properly taxable in that year. In the light of the substantial disparity between his actual income from the business and that which he reported, we cannot believe that Whitfield, being intimately responsible for the success of the business, was not aware that a large amount of his income had been omitted. [3]
*66 And, certainly Whitfield was aware of the checks payable to the partnership which had been endorsed by him and cashed without being deposited either in the partnership account or the special account. His share in the proceeds of these checks was not reported, nor was it available for determination from the records given to the bookkeeper. Whatever insulation Whitfield could claim because Simmons was the office manager was removed in the summer of 1945 when the latter became ill and died. Whitfield then became the managing partner and kept the records. In September, he operated the business apparently as an individual proprietorship and in October he became the managing partner in the new partnership with Truett. Therefore, in 1945 he was entirely responsible for the business end of Louisiana Auto Sales for half the year. He was responsible at the time the partnership and individual returns for 1945 were prepared and filed. In this period he received numerous checks payable to the partnership which he endorsed and cashed without depositing in the partnership bank account or otherwise recording. In September he received income from sales and bonuses. All of this he admits represented *67 income which was not reported. None of it was evident in the records given to the bookkeeper and accountant in late 1945 for the preparation of the returns for that year. The mistakes of the bookkeeper in preparing her workpapers were significant and resulted in a substantial understatement of partnership income and allowable expenses in each year under consideration. These errors were carried on to the individual returns and affected the income the petitioner reported. However, the net effect of the errors on petitioner's reported income incident to the bookkeeper's errors was minor in relation to the effect that was caused by the failure to report his share in the special account in 1944, or from the checks cashed in 1945 which were not deposited either in the partnership or the special account. On the whole record we find, in the language of the statute, that a part of the deficiency in each of the years 1944 and 1945 is due to fraud. Respondent has also assessed the penalty under section 294 (d) (2) for petitioner's substantial understatement of his estimated tax for 1944 and 1945. This section provides that if eighty per cent of the correct tax exceeds the estimated tax *68 (increased by the amount of taxes withheld) there shall be added to the tax an amount which equals the excess, or six per cent of the amount by which the correct tax exceeds the estimated tax, whichever is the lesser. Petitioner's estimated tax and withholdings for the year 1944 were $894.88 and the correct tax was $5,538.78. His estimated tax for 1945 was $350.88 and the correct tax was $2,155.26. It is apparent that in each year petitioner substantially underestimated his taxes and the penalty under section 294 (d) (2) is applicable. Since we have found fraud on the part of the petitioner for his failure to file correct returns for 1944 and 1945, it is unnecessary to consider his contention that the statute of limitations in section 275 (a) bars the respondent from asserting a deficiency as to 1944. Decision will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2). ↩
2. (a) Negligence. - If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, except that the provisions of section 272(i), relating to the prorating of a deficiency, and of section 292, relating to interest on deficiencies, shall not be applicable.↩
3. Cf. ; also, , affd. Fed. (2d) 750, certiorari denied, (Oct. 12, 1953).↩